1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| C.F., by and through his parent and guardian, L.F., J.P., by and through her mother and next friend, M.P., and L.B., by and through her parent and guardian, D.W., individually, and on behalf of similarly situated individuals,<br><br>        Plaintiffs<br><br>   v.<br><br>PATRICIA LASHWAY, in her official capacity as Acting Secretary of the Washington State Department of Social and Health Services; and DOROTHY F. TEETER, in her official capacity as Director of the Washington State Health Care Authority,<br><br>        Defendants. | NO.  16-1205<br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br><br><br>**(CLASS ACTION)** |

## I.   OVERVIEW

1.      Plaintiffs C.F., J.P., and L.B. are adults with developmental disabilities who are institutionalized, or at serious risk of institutionalization.  All three of these individuals have intensive needs for long-term supports and habilitative services and have no desire to receive these services in an institutional setting.  All three have been, at some point, determined eligible to receive residential and habilitative support services in the community.  However, due to Defendants' failure to establish an effectively working system to ensure such services are

available, all three have lost support services they need and cannot replace. As a result, Plaintiffs are suffering, or are at risk of suffering, unnecessary institutionalization and segregation.

2.   Defendants, and their agencies, the Health Care Authority (HCA) and the Department of Social and Health Services (DSHS), do not have an adequate system for ensuring persons with developmental disabilities receive necessary services in the most integrated setting appropriate to their needs.  In addition to the named Plaintiffs, dozens more individuals are entitled to services, but wait for prolonged periods to receive those services because they are unavailable. These individuals are waiting in state-operated Residential Habilitation Centers (RHC) and other unstable or unsuitable settings in which they are at risk of institutionalization.

3.   Defendants have no effectively working plan to ensure that Plaintiffs and these putative class members will avoid institutionalization. This failure violates their rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, the United States Supreme Court's landmark decision in *Olmstead v. L.C.*, 527 U.S. 581 (1999), and the Social Security Act, 42 U.S.C. § 1396 *et seq.*

4.   This litigation seeks injunctive and declaratory relief to require Defendants establish an adequate system to provide community-based integrated placement for Plaintiffs and class members, who need community-based habilitative services to avoid institutionalization. Without injunctive and declaratory relief, dozens of individuals with developmental disabilities will continue to languish, either with limited services or in institutions isolated from their home communities, without the services they need to live as independently as possible.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 2

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

## II.    PARTIES

5.    **Plaintiff C.F.**  Plaintiff C.F. is a twenty-five year old man who has never wanted to live in an institution.  Unfortunately, he was institutionalized in October 2014 after his community-based supported living provider abruptly terminated his services. With no services to replace the supported living provider who terminated services, Plaintiff C.F. was admitted as a short-term resident to one of DSHS's state-operated RHC's. Since he has been institutionalized, DSHS has been unable to find any other provider willing or able to support him, and he was transferred to a different RHC that is closer to his family, where he has remained segregated from his community.

6.    **Plaintiff J.P.** Plaintiff J.P. is a thirty-two year old woman who, for most of her adult life, has been institutionalized. After being hospitalized for years at Western State Hospital, she discharged to an RHC in 2009. Since then, one supported living agency attempted to provide her with community-based residential services in 2012, but she was re-institutionalized within weeks.  She continued to seek services from a different supported living agency, but it took three years before another agency agreed to offer services. Although a supported living agency has agreed to serve her, it has been attempting for over a year and half to recruit and retain enough staff to support her in the community. Plaintiff J.P. continues to be institutionalized with no planned discharge date.

7.    **Plaintiff L.B.** Plaintiff L.B. is a fifty-one year old woman who has lived her entire life in the community.  After Plaintiff L.B. had received brief respite services in an RHC earlier in her life, her mother and guardian decided she should never be institutionalized on a long-term basis. Nevertheless, Plaintiff L.B. has been at risk of institutionalization since October of 2015, when her supported living provider decided to discontinue services.  Because DSHS was unable

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 3

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

to identify a substitute supported living agency, Plaintiff L.B. temporarily moved into the home of her aging mother (also guardian) and stepfather.  DSHS has sent referral packets to various supported living providers multiple times but has found no agency to accept her referral due to lack of staff.  Without the robust supports provided through residential habilitation services, Plaintiff L.B. remains at risk of institutionalization.

8.     ***Defendant Patricia Lashway.***  Defendant Patricia Lashway is the Acting Secretary of DSHS, the state agency that includes the Developmental Disabilities Administration (DDA).  DSHS, through DDA, is responsible for implementing the Home and Community-Based services authorized under the Medicaid Act for individuals with developmental disabilities.  Ms. Lashway is sued in her official capacity only.  All alleged acts by Ms. Lashway, DSHS and the Developmental Disabilities Administration were taken under color of state law.

9.     ***Defendant Dorothy F. Teeter.***  Defendant Dorothy Teeter is the Director of the Washington State Health Care Authority.  The Health Care Authority is the designated single state agency for Washington's Medicaid programs.  Ms. Teeter is responsible for ensuring that the Medicaid program is administered in a manner consistent with all state and federal laws.  Ms. Teeter is sued in her official capacity only.  All alleged acts by Ms. Teeter and the Health Care Authority were taken under color of state law.

## III.     JURISDICTION AND VENUE

10.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and 28 U.S.C. § 1343(3) and (4) which confer on the federal district courts original jurisdiction over all claims asserted pursuant to 42 U.S.C. § 1983 to redress deprivations of rights, privileges or immunities guaranteed by Acts of Congress and the United States Constitution.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 4

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of Washington and Defendants may be found here.

## IV.     LEGAL FRAMEWORK

### A.   The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act

12.     Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.  §§ 12131-12134, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, are designed to ensure that individuals with disabilities receive their services in the least restrictive, most integrated setting appropriate.

13.     The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1). In enacting the ADA, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[.]" 42 U.S.C. § 12101(a)(2).

14.     Congress further recognized that "people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally; [and] the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[.]" 42 U.S.C. § 12101(a)(6)-(7).

15.     Title II of the ADA applies to public entities, including state or local governments and any departments, agencies, or other instrumentalities of state or local governments. 42 U.S.C. §§ 12131, 12132. It provides that "no qualified individual with a disability shall, by

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 5

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

16.     Title II's implementing regulations prohibit public entities from utilizing "criteria or methods of administration" that "have the effect of subjecting qualified individuals with disabilities to discrimination," or "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities[.]" 28 C.F.R. § 35.130(b)(3)(i), (ii).

17.     The Title II implementing regulation known as the "integration mandate" requires that public entities "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). "The most integrated setting" is one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. § Pt. 35, App. B.

18.     The U.S. Supreme Court has held that Title II of the ADA prohibits the unjustified institutionalization of individuals with disabilities (*Olmstead v. L.C.*, 527 U.S. 581, 597-600 (1999)), noting that segregation of people with disabilities "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," and "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, [and] economic independence."

19.     According to case law and the Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the ADA and *Olmstead v. L.C.*, the ability to state a claim under Title II of the ADA and *Olmstead* is not limited to people currently in institutional or other segregated settings, but applies equally to those at serious risk of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 6

1   institutionalization or segregation (*e.g.*, if a public entity's failure to provide community

2   services "will likely cause a decline in health, safety, or welfare that would lead to the

3   individual's eventual placement in an institution"). *Available at*

4   http://www.ada.gov/olmstead/q&a_olmstead.htm.   As a result, "[i]ndividuals need not wait

5   until the harm of institutionalization or segregation occurs or is imminent" before they may state

6   a claim for illegal discrimination. *Id*.

7         20.    Like the ADA, the Rehabilitation Act prohibits discrimination against people with

8   disabilities under any program or activity that receives federal financial assistance. 29 U.S.C. §

9   794(a). The Rehabilitation Act's implementing regulations prohibit recipients of federal

10   financial assistance from utilizing "criteria or methods of administration" that have the effect of

11   subjecting qualified persons with disabilities to discrimination on the basis of disability, or that

12   have the purpose or effect of defeating or substantially impairing accomplishment of the

13   objectives of the recipient's program with respect to persons with disabilities. 45 C.F.R. §

14   41.51(b)(3)(i)-(ii); 45 C.F.R. § 84.4(b)(4)(i)-(ii). These implementing regulations also require

15   entities receiving federal financial assistance to "administer programs and activities in the most

16   integrated setting appropriate to the needs of qualified . . . persons [with disabilities]." 28 C.F.R.

17   § 41.51(d); *see also*, 45 C.F.R. § 84.4(b)(2).

18   **B.   Title XIX of the Social Security Act**

19         21.    Having chosen to participate the Medicaid program, the State of Washington is

20   required to operate its Medicaid services in compliance with the Social Security Act, 42 U.S.C.

21   § 1396, and its implementing regulations. Section 1915(c) of the Social Security Act, 42 U.S.C.

22   § 1396n(c), allows states to submit a request to the U.S. Secretary of Health and Human

23   Services ("Secretary") to "waive" certain federal Medicaid requirements in order to offer a

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 7

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

broad range of home and community-based services as an alternative to institutional care in an Intermediate Care Facility (ICF).

22.     In order to comply with federal requirements governing Medicaid Home and Community-Based Services (HCBS) waivers for people with intellectual and developmental disabilities, the Defendants must evaluate all individuals referred for admission to an ICF, and periodically re-evaluate those in ICFs, to determine if they require an institutional level of care and whether they may be eligible to receive home and community-based services in lieu of residing in an ICF. 42 U.S.C. § 1396n(c)(2)(B).

23.     Defendants must inform individuals determined to likely require an ICF level of care of the feasible alternatives to institutional placement, including the availability of home and community-based services which could prevent or avoid their continued institutionalization. 42 U.S.C. § 1396n(c)(2)(B)-(C). Defendants must assure that "when a beneficiary is determined to be likely to require the level of care provided in . . . [an ICF], the beneficiary or his or her legal representative will be—(1) [i]nformed of any feasible alternatives available under the waiver; and (2) [g]iven the choice of either institutional or home and community-based services." 42 C.F.R. § 441.302(d). The state must ensure HCBS Waiver participants have a "person-centered service plan" that "[r]eflect[s] that the setting in which the individual resides is chosen by the individual." 42 C.F.R. § 441.301(c)(2)(i).

24.     Defendants must also ensure that Medicaid services for which each individual is eligible are provided with reasonable promptness to ensure each participant's health and welfare. 42 U.S.C. § 1396a(a)(8); 42 U.S.C. §1396n(c)(2)(C).

25.     Defendants must provide an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 8

upon with reasonable promptness. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.201 (a)(1).

Defendants must provide notice of each individual's right to a hearing, the method for obtaining

a hearing, and options for representation.  42 C.F.R. § 431.206(b).  This information must be

provided at the time of any action affecting an individual's claim.  42 C.F.R. § 431.206(c)(2).

## VI.     CLASS ALLEGATIONS

26.     *Definition of Class*.  The class consists of all individuals who:

    a.   Are  Medicaid  recipients  with  an intellectual or developmental disability;

    b.   Need an institutional level of care provided in a Medicaid-certified ICF in the State of Washington; and

    c.   Qualify for and desire DDA home and community-based habilitative services which they are not receiving.

27.     *Size of Class*.  The class of Medicaid recipients who qualify for, have requested, and are not receiving home and community-based services administered by DDA is expected to be so numerous that joinder of all members is impracticable.  Defendants have identified as many as ninety-one DDA clients as waiting for residential habilitative services in the community, while only a handful of these individuals have been offered these services.

28.     *Class Representative C.F.*   Named Plaintiff C.F. is diagnosed with a developmental disability and is a DDA client who has been unable to access home and community-based waiver services to replace the services that were terminated by his residential provider. As a result, he has had no option but to be institutionalized for the past year and a half. His claims are typical of the claims of the other members of the class, and, through his mother and guardian, he will fairly and adequately represent the interests of the class.  There is no known conflict of interest among class members.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

29.     ***Class Representative J.P.***   Named Plaintiff J.P. is diagnosed with a developmental disability and is a DDA client who has been unable to access home and community-based waiver services to replace the services that were terminated by her residential provider. As a result, she has had no option but to be institutionalized for the past seven years. Her claims are typical of the claims of the other members of the class, and, through her mother and next friend, she will fairly and adequately represent the interests of the class.  There is no known conflict of interest among class members.

30.     ***Class Representative L.B.***   Named Plaintiff L.B. is diagnosed with a developmental disability and is a DDA client who has been unable to access home and community-based waiver services to replace the services that were terminated by her residential provider. As a result, she is at risk of being institutionalized. Her claims are typical of the claims of the other members of the class, and, through her mother and guardian, she will fairly and adequately represent the interests of the class.  There is no known conflict of interest among class members.

31.     ***Common Questions of Law and Fact.***  This action requires the determination of whether Defendants violate the requirements under the ADA, the Rehabilitation Act, and the Medicaid Act by failing to have an adequate system in place to (1) provide Plaintiffs and the proposed class with services in the most integrated, least restrictive community-based setting; (2) provide, with reasonable promptness, home and community-based services to Plaintiffs and the proposed class necessary to ensure their health and welfare; and (3) provide adequate notice and due process to Plaintiffs and the proposed class of their eligibility for Medicaid services, including provision of services  in the least restrictive setting, and their right to appeal any such determinations through an administrative fair hearing.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 10

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

32.    ***Defendants Have Acted on Grounds Generally Applicable to the Class***. Defendants, by failing to establish a system for providing a choice of home and community-based services to Plaintiffs and proposed class members with reasonable promptness in the most integrated least-restrictive setting, have acted on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the whole class. Certification is therefore proper under Fed. R. Civ. P. 23(b)(2).

33.    ***Questions of Law and Fact Common to the Class Predominate Over Individual Issues.***  Alternatively, the class may be certified under Fed. R. Civ. P. 23(b)(3).  The claims of the individual class members are more efficiently adjudicated on a class-wide basis.  Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Upon information and belief, there has been no class action suit filed against these defendants for the relief requested in this action.  This action can be most efficiently prosecuted as a class action in the Western District of Washington, where Defendants have their principal place of business, do business, and where Plaintiffs reside.  Issues as to Defendants' conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class.  Certification is therefore proper under Fed. R. Civ. P. 23(b)(3).

34.    ***Class Counsel***.  Plaintiff has retained experienced and competent class counsel.

## VI.    BACKGROUND

35.    Washington State operates four RHCs at Rainier School, Fircrest School, Yakima Valley School, and Lakeland Village, which cumulatively support over 800 residents.  RHCs offer residential supports and training and are certified to be funded as Medicaid state plan

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 11

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

Intermediate Care Facility (ICF) Services and skilled nursing facilities.  In an RHC, there are far more limited opportunities for community-based activities, and the vast majority of training and support services occur in a segregated institutional setting at the RHC.

36.     In addition to providing residential habilitation services in RHCs, Defendants provide community-based residential habilitation services for individuals with developmental disabilities in individuals' own homes rather than in congregate institutional settings. Defendants fund community-based residential habilitation services through the Core and Community Protection Waivers, both of which are Home and Community-Based Services (HCBS) Medicaid waivers.

37.     Community-based residential habilitation services are typically delivered by privately operated for-profit or non-profit supported living agencies.  In addition, residential habilitative services are also delivered through the State Operated Living Alternatives (SOLA) program, which is a supported living program run by DDA.

38.     Residential habilitation services provided by private supported living agencies and the SOLA program are a combination of training, personal care, and supervision to address outcomes in several areas of the individual's life, including "personal power and choice," "competence and self-reliance," "positive recognition by self and others," and "positive relationships." These services should be provided in integrated settings and support individuals in opportunities to engage in a variety of community-based activities.  42 C.F.R. § 441.301(c)(2)(i).

39.     Under the approved Core and Community Protection HCBS waivers, the limit to the amount, frequency, or duration of residential habilitation services is determined by the negotiated daily rates, which are "based on residential support levels (assigned by DD[A]

assessment), specific support needs listed in the assessment, support provided by others (e.g. family members), and the number of people living in the household who can share the support hours."   Individuals may receive anywhere from a few hours a week (Levels 1-3) to daily support with intermittent checks through the night (Level 4) to 24/7 onsite support (Levels 5-6).

40.     Individuals wishing to be discharged from an RHC with more integrated supports may be referred to Washington's "Roads to Community Living" program, which is funded through a federal Medicaid grant called "Money Follows the Person."   This grant provides federal matching funds to provide additional discharge planning and community-based supports for up to one year after a person moves into the community.  After twelve months, Roads to Community Living funding expires and participants are placed on one of the HCBS waivers. Washington's Roads to Community Living plan has estimated eighteen individuals with developmental disabilities will be discharged each year until 2019.

41.     When RHC residents are ready to discharge to community-based residential habilitation services, or waiver participants are seeking new residential habilitation service providers, their DDA case managers prepare a "referral packet" with information about their support needs, history, and preferences. The case managers then submit this referral packet to DDA resource managers, who send the packets to private supported living agencies that are certified to deliver community-based residential habilitation services.

42.     If a supported living agency receiving a referral packet is interested in serving an individual, the agency can notify DDA to proceed with starting services.  No supported living agencies are obligated to accept any referrals, and agencies may rescind their offers to serve individuals.   Once contracted, a supported living agency may also terminate services if it determines it can no longer meet an individuals' health and welfare needs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 13

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

43.     If no supported living agency receiving the packet agrees to serve an individual, DDA may send referral packets to additional agencies, or resend referral packets to the same agencies.

44.     If all private supported living agencies decline DDA's referrals, DDA does not provide the individual with any notice of their right to a fair hearing to address Defendants' failure to provide services with reasonable promptness, or notice of other available options. Instead, individuals must continue to wait indefinitely for a supported living agency willing to provide them with services.

## VII.   FACTUAL ALLEGATIONS

45.     In 2013, DSHS retained a private consultant, Navigant Healthcare, to conduct an independent review of its supported living program.  Navigant's November 11, 2013 report documented that there was a waitlist for supported living services.  It went on to explain, "DDA manages the wait list to prioritize those with the highest levels of need. Due to budget constraints, only individuals whose needs fall into levels 4 through 6 are generally admitted into the program."

46.     Navigant interviewed three supported living providers regarding DDA rate setting and documented the following:

"Providers also discussed the challenge they face due to high staff turnover. They associated low reimbursement rates with an inability to pay competitive wages and high staff turnover. Specifically, the hourly ISS [(Instruction and Support Services)] rates have been decreasing since 2009 while the Washington State minimum wage has increased. In addition, the high turnover puts pressure on their training budgets as they must train all new staff."

47.     In December 2015, DDA identified fifty individuals residing in an RHC who had requested community-based supported living services on or before August 15, 2015, and did not

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

have a discharge date or supported living agency committed to serving them.  In April 2016,
DDA identified an additional forty-one HCBS waiver participants who were authorized to
receive community-based supported living services on or before December 31, 2015, and did
not currently have any supported living agency committed to serving them.

48.     **Plaintiff C.F.** is one of the fifty RHC resident identified in December 2015 as
waiting for community-based residential habilitation services.  His experience is typical of the
proposed class.  He has a developmental disability that qualifies him for HCBS waiver services,
including residential habilitation.

49.     Plaintiff C.F. was approved for residential habilitation services through the Core
Waiver in 2013, when he began to receive services from a private supported living agency. Due
to a series of incidents arising from his unmet complex behavioral support needs, Plaintiff C.F.'s
provider was unable to retain sufficient staff to provide him with services.  After a physical
altercation involving Plaintiff C.F. and the provider's staff, both of whom made cross-
allegations of assault against the other, Plaintiff C.F.'s provider gave DDA a notice of
termination effective within hours.  Without the ability to live independently, Plaintiff C.F.'s
only option was to be admitted to an RHC while DSHS searched for a new provider.

50.     DSHS sent referral packets to several private supported living agencies, but all
agencies declined to accept his referral.  In addition, DSHS inquired about supporting him in its
SOLA program, but there were no openings in that program.  Plaintiff C.F. received no notice of
any opportunity to request a fair hearing.

51.     Since he has been institutionalized, Plaintiff C.F. and his guardian have continued
to desire Medicaid-funded services provided in a more integrated setting.  However, his
guardian has significant concerns about him discharging to a supported living agency that could

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 15

terminate services with little to no notice if the agency is unable to meet his needs or retain sufficient staff.  His guardian recently re-requested SOLA services, but was again told there were no openings in this program.  Because DSHS has been unable to identify a supported living provider who could guarantee services to appropriately support his behavior support needs arising from his dual diagnoses of schizophrenia and autism, he has been unable to access community-based residential habilitation services necessary to discharge from the RHC.

52.     **Plaintiff J.P.** is also one of the fifty RHC residents, identified in December 2015, to be waiting for community-based residential habilitation services.  Her experience is also typical of the proposed class.  She has a developmental disability that qualifies her for HCBS waiver services, including residential habilitation.

53.     Plaintiff J.P. was a class member of *Allen, et al., v. Western State Hospital, et al.,* USDC C99-5018-RBL, another federal class action lawsuit brought in 1999 on behalf of patients with developmental disabilities at Western State Hospital. Under a series of settlement agreements that were in effect from 1999 to 2009, DSHS improved both inpatient and community-based services to meet the needs of people with developmental disabilities who need intensive behavioral supports to be discharged, successfully live in the community, and avoid re-institutionalization.

54.     After being involuntarily committed at the state hospital, DSHS retained a supported living agency who initially agreed to provide Plaintiff J.P. with community-based services and initiated the implementation of a transition plan. However, the transition was not successful and she was discharged from WSH to an RHC in 2009.

55.     Three years later, in 2012, Plaintiff J.P. was discharged from the RHC with supported living services, only to return to the RHC a few weeks later when her supported living

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

agency failed to implement the recommendations in her discharge plan for responding to her behavioral health needs. Since she was re-admitted to the RHC, she continued requesting Medicaid-funded community-based services from a new provider, but all supported living agencies in her home region declined to accept her referral. Plaintiff J.P. received no notice of any opportunity to request a fair hearing.

56.     In January 2015, after DDA sent referral packets to providers in a broader geographic region, a supported living agency outside Plaintiff J.P.'s preferred region accepted a referral, with the caveat that it could take up to a year to find the necessary staff.  Presently, a year and a half later, Plaintiff J.P. still has been unable to transition to the community due to the agency's inability to recruit and retain a sufficient number of staff.  Defendants have no alternative plan or timeline to ensure Plaintiff J.P. does not continue to be institutionalized indefinitely while the supported living agency continues to attempt to recruit and retain the staff needed to support her.

57.     **Plaintiff L.B.** is one of the forty-one HCBS waiver participants who is waiting for the community-based residential habilitation services she is qualified to receive. Her experience is also typical of the proposed class.  She has a developmental disability that qualifies her for HCBS waiver services, including residential habilitation.

58.     When Plaintiff L.B.'s supported living agency provided notice that it would be terminating her residential habilitation services, DDA sent referral packets to other agencies that support individuals in the county where her mother resides.  All of the agencies declined the referral.  Plaintiff L.B. received no notice of any opportunity to request a fair hearing.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 17

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

59.    DDA suggested admission to an RHC as an alternative, and threatened to report Plaintiff L.B.'s guardian to Adult Protective Services (APS) when she requested an additional extension of supported living services while Plaintiff L.B.'s fragile health stabilized.

60.    Refusing to institutionalize her daughter, Plaintiff L.B.'s guardian agreed for Plaintiff L.B. to live temporarily with her and her husband while DDA searched for an alternative Medicaid-funded community-based supported living provider.  As an elderly woman over the age of seventy, Plaintiff L.B.'s guardian does not believe she can indefinitely continue to support Plaintiff L.B. to live at home, which requires that she provide Plaintiff L.B. with significant personal care assistance when hired caregivers cancel, do not show up, or cannot cover a shift.  As a result, Plaintiff L.B. is not receiving the combination of training, personal care, and supervision included in residential habilitation services, and she is at risk of institutionalization.

61.    Plaintiffs C.F., J.P., and L.B. would like to receive the residential habilitative services they need in an integrated community-based settings.

**VII. CLAIMS FOR RELIEF**

**FIRST CLAIM: DECLARATORY RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

62.    Plaintiffs re-allege the paragraphs above.

63.    Plaintiffs and the putative class are all "qualified individuals with a disability" within the meaning of 42 U.S.C. § 12131(2).  Plaintiff and class members have not been provided services they would need to live in an integrated setting in the community.

64.    Defendants' acts and omissions effectively deny Plaintiffs and the putative class the community-based services that they need in order to avoid continued segregation in an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 18

institution in violations of Title II of the ADA, 42 U.S.C. § 12132 and its implementing regulations.

65.     Defendants' "methods of administration" further have the effect of subjecting Plaintiffs and the putative class to discrimination on the basis of disability by subjecting them to unnecessary and unjustified segregation, or placing them at risk of unnecessary and unjustified segregation, in violation of 28 C.F.R. § 35.130 (b)(3).

66.     Defendants further discriminate against Plaintiffs and the putative class by denying them access to services based upon the severity of their disabilities, in violation of 28 C.F.R § 35.130(b)(1). As a result, Defendants relegate Plaintiffs and the putative class to segregated facilities or place them at risk of institutionalization in violation of the ADA.

**SECOND CLAIM:  DECLARATORY RELIEF FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

67.     Plaintiffs re-allege the paragraphs above.

68.     Plaintiffs and putative class members are qualified individuals with disabilities under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (a).  Defendants' agencies, HCA and DSHS, receive federal financial assistance.

69.     Defendants violate Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs and putative class members access to integrated community-based programs appropriate to meet their needs, thereby requiring that Plaintiffs and putative class members be confined in segregated institutions in order to receive the services that they need, or suffer risk of institutionalization.

**THIRD CLAIM: DECLARATORY RELIEF FOR VIOLATIONS OF TITLE XIX OF THE SOCIAL SECURITY ACT**

70.     Plaintiffs re-allege the paragraphs above.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 19

71.     Plaintiffs and the putative class are entitled to declaratory relief pursuant to 42

U.S.C. § 1983 that Defendants have acted under color of state law to violate Title XIX of the

Social Security Act by failing to provide Plaintiffs and class members with (1) Medicaid

benefits with reasonable promptness, 42 U.S.C. § 1396a(a)(8); (a)(10)(A) and its implementing

regulations; (2) a meaningful choice of providers, including a choice between institutional and

community-based services, 42 U.S.C. § 1396n(c)(2)(B); (C); and (3) adequate written notice

of defendants' determinations, as well as their right to appeal to defendants' administrative

hearing process, pursuant to 42 C.F.R. § 431.200 et seq.

### FOURTH CLAIM: DECLARATORY RELIEF FOR VIOLATIONS OF TITLE XIX OF THE SOCIAL SECURITY ACT DUE PROCESS

72.     Plaintiffs re-allege the paragraphs above.

73.     Plaintiffs and the putative class are entitled to declaratory relief pursuant to 42

U.S.C. § 1983 that Defendants have acted under color of state law to violate Title XIX of the

Social Security Act by failing to provide adequate notice and access to an administrative

hearing, 42 U.S.C. § 1396a(a)(3).

### FIFTH CLAIM: INJUNCTIVE RELIEF

74.     Plaintiffs re-allege the paragraphs above.

75.     Plaintiffs and the putative class are entitled to preliminary and permanent

injunctive relief pursuant to 42 U.S.C. § 1983 to require Defendants to fully implement the

ADA, Rehabilitation Act, and Medicaid requirements as they apply to plaintiff and the proposed

class.

### VIII.   DEMAND FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 20

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

1.      Certify this case as a class action; designate the named Plaintiffs as class representatives; and designate DISABILITY RIGHTS WASHINGTON, Sarah Eaton, Susan Kas, and David Carlson, as class counsel;

2.      Declare that that Defendants' failure to implement an adequate system for ensuring the choice of integrated community based services results in unnecessary segregation and institutionalization of Plaintiffs and the class, or places them at risk of unnecessary institutionalization, and violates the Title II of the ADA, Section 504 of the Rehabilitation Act, the Medicaid Act, and the 14th Amendment of the United States Constitution.

3.      Enjoin Defendants from continued violations of Title II of the ADA, Section 504 of the Rehabilitation Act, the Medicaid Act, and the 14th Amendment of the United States Constitution and require Defendants to amend its policies, practices, and procedures to ensure that Plaintiffs and the class are:

      (a)      provided with appropriate community-based residential services with reasonable promptness; and

      (b)      informed that they are eligible for community-based services, that they have the right to choose to receive such services in an institutional or integrated community setting, and that they are entitled to a fair hearing if requested residential habilitative services are not provided with reasonable promptness;

4.      Enter judgment in favor of Plaintiffs and the class;

5.      Award Plaintiffs and the class their attorney fees and costs; and

6.      Award such other relief as is just and proper.

//
//

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1    DATED:  August 2, 2016.

2                                              **DISABILITY RIGHTS WASHINGTON**

3

4                                              */s/ Susan Kas*
                                               Susan Kas, WSBA #36592
5                                              David Carlson, WSBA #35767
                                               Sarah Eaton, WSBA #46854
6                                              315 – 5th Avenue South, Suite 850
                                               Seattle, WA  98104
7                                              Tel. (206) 324-1521; Fax (206) 957-0729
                                               Email:  susank@dr-wa.org
8                                                          davidc@dr-.wa.org
                                                           sarahe@dr-wa.org

9

10                                             Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

COMPLAINT FOR DECLARATORY AND INJUNCTIVE          Disability Rights Washington
RELIEF - 22                                       315 5th Avenue South, Suite 850
                                                  Seattle, Washington  98104
                                                  (206) 324-1521 · Fax: (206) 957-0729