UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

C.F., *et al.*,

    Plaintiffs,

v.

LASHWAY, *et al.*,

    Defendants.

CASE NO. C16-1205RSM

ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Class Certification. Dkt. #18. Plaintiffs C.F., L.B., and J.P., are developmentally disabled Washington State residents who qualify to receive Medicaid-funded supported living services. Despite their qualification, Plaintiffs allege Defendants' systemic mismanagement of the provision of these services has deprived them of due process protections and prompt access to those services. Over a hundred individuals are allegedly also in the same position, and Plaintiffs now seek class certification. Defendants, citing to over 4,000 people currently served through the supported living program, dispute Plaintiffs' allegations and argue that Plaintiffs fail to acknowledge the individualized nature of supported living services and the individuals who use those services. Defendants oppose

ORDER DENYING MOTION FOR CLASS CERTIFICATION– 1

Plaintiffs' motion and argue Plaintiffs fail to meet the requirements for class certification. For the reasons discussed herein, the Court agrees Plaintiffs have not demonstrated the propriety of class certification, and their motion for class certification is DENIED.

## II. BACKGROUND

Plaintiffs C.F., L.B., and J.P., are developmentally disabled Washington State residents who qualify for Medicaid-funded community-based habilitative services. Dkt. #1 ¶ 1. Community-based habilitative services are support services, offered outside of an institutional setting, for developmentally disabled individuals who would otherwise require a level of care usually provided in a hospital, nursing facility, or intermediate care facility. 42 U.S.C. § 1396n(c)(1). Although federal Medicaid law does not require the provision of these services, Washington State has requested Medicaid "waivers," that allow it to offer these services to qualifying Medicaid recipients. 42 U.S.C. § 1396n(c)(1). The Core and Community Protection waivers currently allow Washington State to offer these services, and the Washington Health Care Authority ("HCA") and the Department of Social and Health Services ("DSHS") administer their provision.

Despite their eligibility, Plaintiffs C.F., L.B., and J.P. have not received the community-based habilitative services they seek, and they allege Defendants, the Acting Secretary of the DSHS and the Director of the HCA, are to blame. Dkt. #1 ¶¶ 1-2. According to Plaintiffs, Defendants and their respective agencies have not established an adequate system to insure individuals with developmental disabilities receive habilitative services in community-based settings. *Id*. ¶ 3. Instead, Plaintiffs allege the provision of these services is not reasonably prompt, individuals are not provided a meaningful choice of community-based habilitative service

providers, individuals are not notified of their right to a hearing when there is a determination or delay in the provision of these services, and the current administration of these services allows community-based habilitative service providers to discriminate against developmentally disabled individuals based on the severity of their disability. *Id*. ¶¶ 2, 31, 44, 62-69.

As a result of Defendants' purported failures, Plaintiffs contend they are at serious risk of institutionalization. Plaintiffs thus allege Defendants' administration of these services violates the integration mandates of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and the Supreme Court's pronouncement in *Olmstead v. L.C.*, 527 U.S. 581 (1999). *Id*. ¶¶ 1-3, 31, 62-69. The "integration mandate," an implementing regulation of Title II of the ADA, requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). A setting is the "most integrated" if it "enables individuals with disabilities to interact with nondisabled person to the fullest extent possible." 28 C.F.R. § Pt. 35, App. B. The implementing regulations of the RA also require entities that receive federal funding to administer programs and activities in the most integrated setting appropriate. *See* 28 C.F.R. § 41.51(d); *also* 45 C.F.R. § 84.4.(b)(2). Plaintiffs also allege Defendants deny them access to community-based habilitative services based on the severity of their disabilities. Dkt. #1 ¶ 66 (citing 28 C.F.R. § 35.130(b)(1)).

Aside from alleging integration mandate violations, Plaintiffs also claim Defendants' administration of the Core and Community Protection waivers violates Title XIX of the Social Security Act, 42 U.S.C. § 1396. Dkt. #1 ¶¶ 70-75. Defendants allegedly violate Title XIX because they fail to provide Plaintiffs, and the proposed class members, with: (1) reasonably prompt access

to community-based habilitative services; (2) a meaningful choice of providers; and (3) adequate written notification of Defendants' determinations and Plaintiffs' right to appeal those determinations. *Id*. ¶¶ 71 and 73. Plaintiffs request declaratory and injunctive relief, and now seek certification of a Rule 23(b)(2) class. Dkts. #1 ¶¶ 62-75 and #18 at 22.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must demonstrate "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). After satisfying all four requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). *Dukes*, 564 U.S. at 345; *also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). In this case, Plaintiffs seek to certify a class under Rule 23(b)(2). Dkt. #18 at 22-24. Rule 23(b)(2) requires Plaintiffs to demonstrate "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Notably, Rule 23 "does not set forth a mere pleading standard." *Id.* at 350. Instead, the party seeking certification must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common

ORDER DENYING MOTION FOR CLASS CERTIFICATION– 4

questions of law or fact, etc." *Id.* "Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51 (internal quotation omitted). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation omitted). Nonetheless, the ultimate decision regarding class certification "involve[s] a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

## IV. DISCUSSION

Plaintiffs assert they meet the requirements of Rule 23(a) and Rule 23(b)(2). Defendants do not agree, and they also challenge Plaintiffs' reliance on an expert declaration and Plaintiffs' proposed class definition. *See* Dkt. #36 at 20-23. The Court agrees that Plaintiffs' proposed class definition, along with Plaintiffs' failure to establish three of Rule 23(a)'s requirements, precludes class certification. However, before the Court commences its Rule 23 analysis, it first considers Defendants' request for the Court to strike the declaration of Dr. Robin J. Wilson, and Defendants' challenge to Plaintiffs' proposed class definition.

1. <u>Plaintiffs' Reliance on the Declaration of Dr. Robin J. Wilson</u>

The Court will not strike Dr. Wilson's declaration. Defendants contend the interest of fairness, and the underlying principles of discovery, warrant striking Dr. Wilson's declaration. Dkt. #36 at 20. Defendants argue Plaintiffs' failure to timely disclose Dr. Wilson as their expert deprived them of the opportunity to "properly scrutinize" Dr. Wilson's qualifications, and

deprived them of the opportunity to arrange their own expert. *Id.* at 21-22. Defendants' arguments are not persuasive.

Defendants were notified of Plaintiffs' reliance on Dr. Wilson's testimony on April 3, 2017, when Plaintiffs filed their class certification motion. This gave Defendants three weeks within which to depose Plaintiffs' expert, or to obtain their own expert to rebut Dr. Wilson's testimony. *See* Local Civil Rule 7(d)(3) and 7(j). Additionally, Defendants had other procedural devices at their disposal if three weeks did not provide enough time for them to depose Dr. Wilson. For instance, Defendants could have filed a motion for relief from their response deadline. *See* LCR 7(d)(2). However, instead of taking active steps to scrutinize Dr. Wilson's declaration, Defendants instead waited until they filed their response to raise any objection to Dr. Wilson's testimony. Given these circumstances, the Court is not convinced that striking Dr. Wilson's declaration is proper.

2. Plaintiffs' Proposed Class Definition

Before considering the requirements of Rule 23, courts within the Ninth Circuit typically assess whether a plaintiff's proposed class definition is sufficiently definite. *See, e.g.*, *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) ("An implied prerequisite to certification is that the class must be sufficiently definite.") (citation omitted). A class definition is sufficiently definite if it is "administratively feasible" for the Court to determine, through objective criteria, who belongs to the proposed class. *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, *8 (N.D. Cal. June 13, 2014) ("A class is not ascertainable unless membership can be established by means of objective, verifiable criteria."); *Lilly v. Jamba Juice Co.*, 308 F.R.D.

231, 236 (N.D. Cal. 2014) (internal quotes and citations omitted). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2017). How precisely a definition must delineate a class depends on the type of class action a party seeks to certify. *E.g.*, *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014). Because Rule 23(b)(2) class actions do not present the same due process and manageability concerns of Rule 23(b)(3) class actions, class definitions for 23(b)(2) actions can be less precise, and at least one district court within the Ninth Circuit has indicated the definiteness requirement does not apply to these class actions. *E.g.*, *Multi-Ethnic Immigrant Workers Org. Network v. Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007); *In re Yahoo Mail Litig.*, 308 F.R.D 577, 597 (N.D. Cal. 2015) ("[A]s a matter of practical application, the ascertainability requirement serves little purpose in Rule 23(b)(2) classes, as there will generally be no need to identify individual class members.").

Plaintiffs propose certification of a Rule 23(b)(2) class action comprised of all individuals who:

> a. Are Medicaid recipients with an intellectual or developmental disability;
>
> b. Need an institutional level of care provided in a Medicaid-certified Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID), in the State of Washington; and
>
> c. Qualify for and desire home and community-based habilitative services which they are not receiving."

Dkt. #18 at 3.

Defendants oppose Plaintiffs' proposed class definition for two reasons. Dkt. # 36 at 18-20. Defendants first contend the proposed class is not sufficiently definite. To support this argument Defendants argue the phrases "intellectual or developmental disability," "Need an

ORDER DENYING MOTION FOR CLASS CERTIFICATION– 7

institutional level of care provided in a Medicaid-certified [ICF/IID]," and "home and community-based habilitative services," require the Court to make "numerous assumptions," and at least one term is susceptible to several meanings. *Id*. at 18-19. Defendants also contend Plaintiffs' proposed definition does not rely on objective criteria because it contains the word "desire." *Id*. at 19-20. Use of the word "desire" raises concern for Defendants because it requires the court to make a "subjective determination based on an individual's state of mind," to determine if an individual belongs in the class. *Id*. at 20. Finally, Defendants contend Plaintiffs' reliance on the word "desire" renders the class overbroad, and will result in a class that "significantly exceeds the scope of potential relief," because people who are not ready for supported living services may also fall within the class definition. *Id*.

Plaintiffs do not directly address Defendants' class definition arguments in their Reply. *See* Dkt. #51. Instead, Plaintiffs' Reply briefly touches on Defendants' argument by explaining they "have been explicit that they are alleging actions and inaction that apply to Medicaid beneficiaries with undisputed developmental disabilities . . . ." *Id*. at 9.

The Court agrees Plaintiffs' proposed class definition is not sufficiently definite. Although Rule 23(b)(2) class actions can be less precise than those required by Rule 23(b)(3), here Plaintiffs' definition is amorphous and potentially overbroad. As indicated by Defendants, at least one phrase within Plaintiffs' proposed class is not defined, and the word "desire" does not allow the Court to determine, based on objective criteria, who is included in the proposed class. Additionally, while Plaintiffs' Complaint refers to the Core and Community Protection waivers administered by Defendants, Plaintiffs' proposed class definition does not indicate if the class of "Medicaid recipients with an intellectual or developmental disability," is limited to those individuals approved

ORDER DENYING MOTION FOR CLASS CERTIFICATION– 8

for services on those waivers. Finally, and most importantly, although Plaintiffs allege Defendants do not provide supported living services with reasonable promptness, their class definition does not include a temporal component. As a result, Plaintiffs' proposed class definition may include individuals who have waited less than a day for community-based habilitative services. Given Plaintiffs' allegations, Plaintiffs' class definition would benefit from a time-based component that will allow the Court to properly determine the scope of the proposed class.

Plaintiffs' failure to reply to Defendants' class definition challenge, coupled with the above-identified concerns, leave the Court no choice but to reject Plaintiffs' proposed class definition. However, even if Plaintiffs' definition were accepted, the Court would nonetheless decline to certify the proposed class because Plaintiffs do not satisfy Rule 23(a)'s numerosity, commonality, or typicality requirements.

3. Rule 23(a)

   a. *Plaintiffs Fail to Establish Numerosity.*

Under Rule 23(a)(1), a class action may only be maintained if "the class is so numerous that joinder of all members is impracticable." Courts consider several factors to determine if joinder of class members is impracticable, and plaintiffs need not demonstrate that joinder is impossible. 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed. 2017). The size of the proposed class, the location of putative class members, the nature of the action and relief sought, and class members' reluctance or inability to sue on their own may all contribute to a court's Rule 23(a)(1) analysis. *Id.*; *also Gray*, 279 F.R.D. at 508; *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

The deficiencies in Plaintiffs' proposed class definition do not allow the Court to determine if Plaintiffs satisfy Rule 23(a)(1)'s numerosity requirement. Plaintiffs rely on discovery materials and responses obtained from Defendants to argue that over 100 people are waiting for supported living services. Dkt. #18 at 17; *see* Dkt. #22, Exs. C at 36-37 and Ex. G. However, Defendants estimate that, as of April 2017, only thirty people identified in their discovery responses are now waiting for community-based habilitative services, and they contend Plaintiffs' estimate of people who expressed interest in supported living services is overly broad and may include people who have waited a minimal amount of time for those services. Dkts. #36 at 16 and #38 ¶ 8. Regardless of the actual number of people currently waiting for community-based habilitative services, the Court finds that Plaintiffs' failure to properly delineate its proposed class does not allow the Court to properly determine if the class is sufficiently numerous. As previously explained, given Plaintiffs' allegation that community-based habilitative services are not provided with reasonable promptness, the Court must have some basis by which to determine whether a person waiting for the requested services has waited long enough to be considered a part of the proposed class. Without this guideline, the Court cannot determine, based merely on a disputed estimate, whether Plaintiffs have established numerosity.

    b. *Plaintiffs Fail to Establish Commonality.*

Plaintiffs also do not meet the evidentiary burden necessary to demonstrate commonality. Commonality can be established if Plaintiffs demonstrate they and the proposed class members "'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50 (quoting *Falcon*, 457 U.S. at 157). This can be done if Plaintiffs raise a "common contention" between them and the proposed class members of "such a nature that it is capable of classwide resolution." *Id*. at 350. Here, Plaintiffs'

Complaint raises no common contentions.[1]  Instead, Plaintiffs attempt to meet their burden by simply asserting Defendants are violating provisions of the Medicaid Act, the ADA, and the RA, and by listing five questions they claim are common to the proposed class.  Dkt. #18 at 18-19.  However, as explained by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011), to demonstrate commonality plaintiffs must do more than merely allege they and the proposed class have suffered violations of the same provisions of law.  Plaintiffs also must do more than simply identify questions they claim are common to the entire class.  *Id*. at 350 ("'What matters to class certification . . . is not the raising of common questions-even if droves-but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97 (2009)).

Plaintiffs' identification of questions they claim are common to the entire class fails to establish commonality because Plaintiffs do not demonstrate resolution of these questions will "generate common *answers* apt to drive the resolution of the litigation." *Id*.  The questions raised by Plaintiffs include: (1) Do Defendants' policies and practices facilitate authorization of Supported Living services with reasonable promptness?; (2) Do Defendants have a referral and reimbursement system that effectively provides Supported Living with reasonable promptness?;

---

[1] Plaintiffs' Complaint alleges their rights under the ADA, RA, and MA have been violated as a result of Defendants' failure to establish "an adequate system" to ensure Plaintiffs receive community-based habilitative services in integrated settings. Dkt. #1 ¶¶ 2-4, 31, 32.  However, neither Plaintiffs' Complaint nor their Motion for Class Certification identifies which of Defendants' acts, omission, practices, or policies Plaintiffs seek to challenge.  Instead, Plaintiffs' motion merely references an inflexible reimbursement model, the lack of a guarantee of continued services, as well as Defendants' failure to issue a "Planned Action Notice" to DDA clients, in the "FACTS" section of their Motion for Class Certification.  Dkt. #18 at 9-16.

(3) Do Defendants provide appropriate due process when Supported Living services are terminated or unavailable? (4) Do Defendants have an adequate oversight and quality assurance system for ensuring that its contracted Supported Living providers are delivering sufficient supports to meet individuals' needs?; and (5) Do Defendants' policies and practices result in unnecessary institutionalization or risk of institutionalization? Dkt. #18 at 18-19. Because Plaintiffs do not raise common contentions, the Court cannot determine whether these questions will "resolve an issue that is central to the validity of each one of the [individual class members'] claims in one stroke." *Dukes*, 564 U.S. at 350. Additionally, the first, second, third, and fifth questions posed by Plaintiffs merely ask if Defendants violate the law. However, simply asking whether Defendants violate the law is not a sufficient basis to certify a class. *See Dukes*, 564 U.S. at 349 (finding that recitation of questions, including the question "Is that an unlawful employment practice?," is "not sufficient to obtain class certification"); *also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 844 (5th Cir. 2012) ("mere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement") (quotation marks and citations omitted). Plaintiffs must instead demonstrate they and proposed class members suffer the same injury. *Dukes*, 564 U.S. at 349-50. This may be done if Plaintiffs identify a specific policy or practice which they claim underlies the denial of the community-based habilitative services they seek. *See Parsons v. Ryan*, 754 F.3d 657, 678-679 (9th Cir. 2014) (commonality met where plaintiffs specified statewide policies and practices and district court confirmed the class members were "as one in their exposure to a particular and sufficiently well-defined set of allegedly illegal policies and practices"); *also DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013) ("In the absence of identification of a policy or practice that affects all members of the class in the

manner *Wal–Mart* requires, the district court's analysis is not faithful to the Court's interpretation of Rule 23(a) commonality.").

In summary, because Plaintiffs fail to demonstrate they and proposed class have suffered the same injury, commonality has not been established.

    c. *Plaintiffs Fail to Establish Typicality.*

Plaintiffs' failure to establish commonality also affects their ability to demonstrate typicality. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims of the class." Fed. R. Civ. P. 23(a)(3). Under this requirement, the Court must "focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 4:16 (13th ed. 2016). To make this determination, the Court must compare Plaintiffs' claims or defenses, with the claims or defenses of the class. *Id*. Notably, the "commonality and typicality requirements of Rule 23(a) tend to merge," as "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13.

Here, Plaintiffs do not demonstrate their claims and those of the proposed class have the same essential characteristics. Instead, Plaintiffs merely allege their claims are typical of the proposed class' claims because they, like the proposed class members, are denied due process protections, are denied prompt access to supported living services, and they are all either unnecessarily institutionalized or at risk of being unnecessarily institutionalized. Dkt. #18 at 20-

21. This argument fails to demonstrate typicality because it alleges generalized violations of the law without explaining how Plaintiffs' claims are similar to the claims of the proposed class. Instead, Plaintiffs allude to unspecified policies and practices, but their failure to specify even one policy or practice prevents the Court from determining if Plaintiffs' claims are typical of the proposed class' claims. *See* Dkt. #18 at 20-21. Consequently, Plaintiffs fail to establish typicality under Rule 23(a)(3).

### a. Plaintiffs Establish Adequacy of Representation.

A class action will only be certified if plaintiffs can demonstrate "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate where: (1) the class representative and their counsel do not have conflicts of interest with other class members; and (2) the class representatives and their counsel will "prosecute the action vigorously on behalf of the class." *Gray*, 279 F.R.D. at 520. Here, Plaintiffs contend their claims and interests do not conflict with the interests of other class members since they all share an interest in "obtaining systemic reform that is necessary to enforce their rights under the law." Dkt. #18 at 22. Plaintiffs have also submitted a declaration by their counsel. *See* Dkt. #19. In that declaration, Plaintiffs' counsel lists her experience litigating class actions and her commitment to litigating Plaintiffs' claims vigorously. *Id*. ¶¶ 5-9. Defendants do not dispute Plaintiffs' satisfaction of Rule 23(a)(4), and the Court is persuaded that Plaintiffs satisfy this subsection of Rule 23.

Despite Plaintiffs' satisfaction of Rule 23(a)(4), the Court is not convinced this case is suited for class action treatment. Because Plaintiffs' class definition is not sufficiently definite,

and because Plaintiffs have not satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements, their motion for class certification is DENIED.[2]

### V. CONCLUSION

Having reviewed Plaintiffs' motion for class certification, the opposition thereto and reply in support thereof, along with the declarations submitted by the parties and the remainder of the record, the Court hereby finds and ORDERS Plaintiffs' Motion for Class Certification (Dkt. #18) is DENIED.

DATED this 14 day of June, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Because Plaintiffs fail to satisfy three of Rule 23(a)'s requirements, the Court will not assess whether Plaintiffs satisfy Rule 23(b)(2). Rule 23(b)(2) requires plaintiffs to demonstrate defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).